J-S18032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                        :          PENNSYLVANIA
                                        :
            v.                       :
                                        :
                                        :
RYAN L. DUBOISE                   :
                                        :
           Appellant             :    No. 2242 EDA 2022

Appeal from the PCRA Order Entered August 11, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011415-2014

BEFORE: PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:           **FILED JULY 13, 2023**

Ryan L. Duboise appeals ***pro se*** from the August 11, 2022 order

dismissing his petition filed pursuant to the Post Conviction Relief Act

("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

The relevant facts of this case were set forth by a prior panel of this

Court as follows:

> From the time [the victim,] Monet Hall[,] and
> [Appellant] began dating, until the moment
> [Appellant] murdered her, the two had a violent and
> abusive relationship. In January 2014, Hall and
> [Appellant] moved into an apartment on Allegheny
> Avenue in Philadelphia. Not long after, on February
> 5, 2014, Hall sought treatment at Mercy Fitzgerald
> Hospital for rib injuries. On February 22, 2014, Hall's
> cousin, Angela Starks, called 911 after a crying Hall
> called her and told her that [Appellant] would not stop

---

[*] Former Justice specially assigned to the Superior Court.

punching her in the stomach. On March 4, 2014, Hall was treated at Temple University Hospital for a closed head injury, contusions, and a facial laceration, after being hit in the head with a bottle.

On the morning of April 2, 2014, two days before Hall was found dead, Police Officer Christopher Reeder and his partner responded to a 911 call for a person with a weapon on Allegheny Avenue. The police encountered Hall[,] who appeared under the influence[,] and requested transportation to a hospital. She informed police that she had had an altercation with her boyfriend and that her head hurt. That same day, Hall told Temple University Hospital staff that her boyfriend physically assaulted, punched, and kicked her. She was offered social service help but declined.

On the morning of April 4, 2014, after [Appellant] returned to his apartment from spending the night at his best friend Dustin Taylor's house, he called 911 and reported that he had found Hall unresponsive. When medics arrived at or around 7:30 a.m., they found Hall dead, lying naked on a bed. [Appellant] claimed that he did not know what had happened to her. After the medics informed [Appellant] that Hall was dead, [Appellant] swiftly left the apartment. Outside, he encountered Firefighter Captain Crespo. According to the captain, [Appellant] appeared nervous and uncomfortable and refused to give his name or relation to the deceased. [Appellant] then walked to the corner and disappeared.

In the bedroom where Hall was found dead, Officer Guaraldo recovered a broken flat iron inside a wastebasket near the bed. The flat iron was broken into three pieces: a large piece connected to a cord, a paddle-like shaped piece, and a small plastic piece. Both Detective Crone and Officer Guaraldo observed a unique pattern of marks on Hall's buttock and left hip consistent with the flat iron's shape. After noticing injuries around Hall's neck, they also found an audio-visual ("AV") cord on the television stand at the foot of the bed. DNA mixtures found on both the flat iron

and the AV cord were consistent with that of Hall and [Appellant].

Dr. Gary Collins, former Deputy Chief Medical Examiner of Philadelphia, testified that Hall had numerous bruis[es], abrasions, and scrapes about her face, forearms, hips, legs, and buttocks. The cause of death was homicidal violence, including blunt impact injuries and strangulation. The victim's bodily injuries were severe enough to cause a large amount of fat emboli to enter the blood vessels of her lungs, preventing proper oxygenation of her blood, which may have contributed to her death.

After [Appellant] returned to the scene, Captain Crespo pointed him out to police. When questioned by police, [Appellant] said that Hall had died from a drug overdose and that someone had beaten her. The officers decided to bring him to the homicide unit for further questioning. When placing [Appellant] in handcuffs, the officers noticed that his hands were swollen with several marks on his right hand. Officer Van Sciver observed that [Appellant's] hands were so swollen that they were almost double their normal size.

On April 4 and on May 20, 2014, Dustin Taylor gave statements to Philadelphia Police detectives. He told detectives that [Appellant] came to his apartment on the night of April 3, 2014 (the night before Hall was found dead), and that his hands were swollen — his right hand was so puffy, it resembled "genetically modified chickens." Taylor said he joked about [Appellant's] swollen hands, but [Appellant] did not respond, something Taylor found strange.

Taylor also informed detectives that [Appellant] and Hall had domestic problems and that [Appellant] had complained to Taylor several times about Hall stealing drugs (crack and heroin) from him. [Appellant] also told Taylor that he would kick and punch Hall's ankles and legs and verbally abuse her, calling her a b[**]ch, whore, and crack whore. Taylor said that two days before [Appellant] slept at his house, [Appellant] and

- 3 -

Hall had a domestic incident after Hall stole $20.00 from [Appellant] and used it to get high.

Recovered video footage from surveillance cameras located diagonally across and down the street from [Appellant] and Hall's apartment showed an individual leaving at or about 8:20 p.m. on April 3, 2014, and returning to the apartment the next morning at or about 7:27 a.m. No one was seen on the video entering or exiting the property after the individual left. When [a] detective brought [Appellant] into the Homicide Unit on April 4, his clothing was consistent with the clothing worn by the individual in the video — a black, white, and grey checkered shirt with a hoodie.

Francis Curry, [Appellant's] cell mate while incarcerated in April or May 2014 at the George W. Hill Correctional Facility in Delaware County, testified that after [Appellant] was arrested for Hall's murder, he told Curry that right before Hall died, he and Hall argued over a phone call from another male and that Hall had stolen money for pills (Xanax). [Appellant] told Curry that he hit Hall a couple times and gave her more pills. He claimed that after Hall ingested the pills, she made gargling sounds and asked for [Appellant] to call 911, but he refused. [Appellant] claimed that he left Hall in the apartment; when he returned, she was dead.

***Commonwealth v. Duboise***, 185 A.3d 1087 (Pa.Super. 2018) (unpublished memorandum at *1-2), ***appeal denied***, 196 A.3d 617 (Pa. 2018), ***quoting*** trial court opinion, 9/8/16, at 2–5.

The PCRA court summarized the procedural history of this case as follows:

On August 5, 2014, [Appellant] was arrested and charged with murder and possession of an instrument of crime ("PIC"). On April 4, 2016, after being

permitted to proceed **pro se**, [Appellant] appeared before this Court and elected to be tried by a jury. On April 12, 2016, the jury convicted [Appellant] of third-degree murder and PIC.[1]

On June 27, 2016, th[e trial c]ourt sentenced [Appellant] to twenty to forty years imprisonment for third-degree murder and a consecutive sentence of two-and-a-half to five years for PIC, for a total sentence of twenty-two-and-a-half to forty-five years imprisonment. [Appellant] appealed and the Superior Court affirmed [Appellant's] judgment of sentence on February 6, 2018. On October 30, 2018, the Pennsylvania Supreme Court denied [Appellant's] petition for allowance of appeal. [**See Commonwealth v. Duboise**, 185 A.3d 1087 (Pa.Super. 2018), **appeal denied**, 196 A.3d 617 (Pa. 2018).]

On July 29, 2021, [Appellant] filed a **pro se** [PCRA] petition, his first. On August 27, 2021, [Appellant] filed a Motion for DNA Testing requesting DNA testing on saliva found on the rectal swab from the decedent Monet Hall's sexual assault kit and that DNA evidence in the Commonwealth's possession from a third unknown contributor be entered into the Combined DNA Index System ("CODIS") and the Local DNA Index System ("LDIS"). [Appellant's] PCRA counsel, Jason D. Javie, Esq. [(hereinafter, "Attorney Javie" or "PCRA counsel")], entered his appearance on January 7, 2022.[2]

On January 10, 2022, th[e PCRA c]ourt denied [Appellant's] request to enter DNA evidence into CODIS and LDIS. On January 18, 2022, th[e PCRA c]ourt ordered the Commonwealth to conduct DNA testing on the rectal swab from the decedent's sexual assault kit and provide the results to [Appellant]. On

_____

[1] 18 Pa.C.S.A. §§ 2502(c) and 907(a), respectively.

[2] The record reflects that Attorney Javie did not file an amended petition on Appellant's behalf, but represented him during the PCRA proceedings.

> May 9, 2022, [Appellant] filed a memorandum of law supplementing his PCRA petition.

PCRA court opinion, 8/11/22 at 1-2 (extraneous capitalization and internal footnote omitted).

The PCRA court conducted evidentiary hearings on April 12, May 9, May 24, and July 6, 2022. Following these hearings, the PCRA court denied Appellant's petition on August 11, 2022. PCRA counsel was subsequently granted permission to withdraw after Appellant requested permission to proceed *pro se*. On August 22, 2022, Appellant filed a timely *pro se* notice of appeal. Although not ordered to do so, Appellant filed a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), on August 24, 2022. In lieu of a filing an additional Rule 1925(a) opinion, the PCRA court refiled its prior August 11, 2022 opinion authored in support of its order denying Appellant's PCRA petition.

Appellant raises the following issues for our review:

I. Did the PCRA court err in denying a new trial based on a finding that Appellant's after-discovered witness was of questionable credibility by misapprehending the facts and using the same factor it would have asked the jury to consider?

II. Did the PCRA court err as a matter of law by rendering factual determinations that were inconsistent with the record, and applying the wrong legal standard when it dismissed Appellant's unopposed PCRA petition on the basis that the after-discovered DNA evidence was not likely to change the outcome of Appellant's trial?

III.    Did PCRA counsel render inadequate assistance of counsel when he failed to raise the Commonwealth's bad faith failure to preserve the entire raw surveillance video of the entrance of [victim's] apartment?

IV.    Did the PCRA court err when it failed to consider that the scientific DNA evidence was clear and convincing evidence that demonstrated Appellant's actual innocence in violation of his due process rights under the Fourteenth Amendment of the United States Constitution and Article 1, section 9, and Article 1, section 13 of the Pennsylvania Constitution?

Appellant's brief at 3.

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa.Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa.Super. 2002) (citation omitted).

Preliminarily, we must consider the timeliness of Appellant's PCRA petition because it implicates the jurisdiction of this court and the PCRA court. *Commonwealth v. Davis*, 86 A.3d 883, 887 (Pa.Super. 2014) (citation

omitted). All PCRA petitions, including a second or subsequent petition, must be filed within one year of when a defendant's judgment of sentence becomes final. **See** 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

Here, the record reveals that our Supreme Court denied Appellant's petition for allowance of appeal on October 30, 2018. **See Commonwealth v. Duboise**, 185 A.3d 1087 (Pa.Super. 2018), **appeal denied**, 196 A.3d 617 (Pa. 2018). Thus, Appellant's judgment of sentence became final on January 28, 2019, when the 90–day time period for filing a petition for a **writ of certiorari** with the United States Supreme Court expired. **See** 42 Pa.C.S.A. § 9545(b)(3). Accordingly, Appellant had until January 28, 2020 to file a timely PCRA petition. **Id.** at § 9545(b)(1). Appellant's instant PCRA petition was filed July 29, 2021, a year and a half after his judgment of sentence became final, and is patently untimely. Accordingly, appellant was required to plead and prove that one of the three statutory exceptions enumerated in Section 9545(b)(1) applies.

The three statutory exceptions to the PCRA time-bar are as follows:

> (i)    the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i-iii). A petition invoking any of these exceptions must "be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

# I.

Instantly, Appellant invokes the "newly-discovered facts" exception to the PCRA time-bar and argues that he is entitled to a new trial based upon the fact that Erik Patterson, a fellow inmate at SCI Forest, informed him that he saw the victim at her apartment with a man named Raheem or Rasheem on the evening of her murder. Appellant's brief at 7-12.

> To establish the newly discovered fact timeliness exception in [Sub]section 9545(b)(1)(ii), a petitioner must demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015) (citations and quotation marks omitted), *appeal denied*, 125 A.3d 1197 (Pa. 2015).

Accordingly, we must determine whether Appellant has established both "that the facts upon which the claim was predicated were unknown and could not have been ascertained by the exercise of due diligence." *Commonwealth v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007) (emphasis and numeration omitted), citing 42 Pa.C.S.A. § 9545(b)(1)(ii).

Here, we find that Appellant's claim satisfies the "newly-discovered facts" exception. The record reflects that these "facts" were unknown to Appellant and could not have been discovered through the exercise of due diligence because he was not aware that Patterson allegedly observed the victim and another man at her apartment on the evening of her murder until he was informed by Patterson of this fact in July 2021, while incarcerated at SCI Forest. Appellant, in turn, raised this claim on July 29, 2021, less than a year after the period to raise a claim pursuant to a PCRA time-bar exception would have expired.

Although this claim is timely under Section 9545(b)(1)(ii), we agree with the PCRA court that it is devoid of merit. To be eligible for relief on a claim of after-discovered evidence, a PCRA petitioner must plead and prove by a preponderance of the evidence that the evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or

- 10 -

cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa.Super. 2012) (citation omitted).

Here, our review of the record reveals that Appellant failed to establish that this evidence would have likely compelled a different verdict if a new trial were granted. As recognized by the PCRA court,

> Even if a new trial were granted, Patterson's testimony would not result in a different verdict because the evidence presented at trial overwhelmingly established [Appellant's] guilt. Surveillance video of the apartment on the night of the murder does not show that Patterson or any other individual entered or exited the apartment that night besides [Appellant]. There is DNA evidence linking [Appellant] to the objects used to murder the decedent. [Appellant's] DNA was found on both the flat iron and the AV cord as well as under the decedent's fingernails. The decedent's blood was found on [Appellant's] jacket and the presence of blood was also found on [Appellant's] boots, jeans, underwear, and shirt that he wore the night of the murder. [Appellant's] hands were swollen and had several marks on them when he was handcuffed by the police shortly after the decedent's body was discovered.
>
> There was a history of domestic abuse between [Appellant] and the decedent. The most recent incident occurred only two days before the decedent's body was discovered where the police were called when the decedent had armed herself with a knife after allegedly being assaulted by [Appellant] at their apartment. At that time, the decedent was taken to Temple University Hospital for head and abdominal pain.

PCRA court opinion, 8/11/22 at 15 (citations omitted).

We agree with the PCRA court's determination that Patterson's testimony would not have likely compelled a different verdict. Accordingly, we affirm on the basis of the aforementioned analysis.

## II. & IV.

Appellant next argues that he is entitled to a new trial based upon the discovery of a small quantity of DNA from a third unknown male that was found on the rectal swab in the victim's sexual assault kit. Appellant's brief at 13-17. In conjunction with this claim, Appellant contends that the PCRA court erred in failing to find that this DNA evidence was clear and convincing evidence of his actual innocence. *Id.* at 22-23. For the following reasons, we disagree.

Post-conviction DNA testing is governed by 42 Pa.C.S.A. § 9543.1, which provides, in relevant part, that "[a]n individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction." *Id.* at §9543.1(a)(1).

> Though brought under the general rubric of the PCRA, motions for post-conviction DNA testing are clearly separate and distinct from claims brought pursuant to other sections of the PCRA. This Court has consistently held the one-year jurisdictional time bar

of the PCRA does not apply to motions for DNA testing under Section 9543.1. Another distinction of motions for DNA testing is that Section 9543.1 does not confer a right to counsel.

Importantly, a motion for post-conviction DNA testing does not constitute a direct exception to the one year time limit for filing a PCRA petition. Instead, it gives a convicted person a vehicle to first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa.C.S.A. § 9545(b)(2).

*Commonwealth v. Williams*, 35 A.3d 44, 50 (Pa.Super. 2011) (citations and internal quotation marks omitted), *appeal denied*, 50 A.3d 121 (Pa. 2012).

Section 9543.1(f) further provides that:

After the DNA testing conducted under this section has been completed, the applicant may, pursuant to section 9545(b)(2) (relating to jurisdiction and proceedings), during the one-year period beginning on the date on which the applicant is notified of the test results, petition to the court for postconviction relief pursuant to section 9543(a)(2)(vi) (relating to eligibility for relief).

*Id.* § 9543.1(f)(1).

Our Supreme Court has recognized that "after-discovered evidence is a substantive basis for relief under the PCRA, applicable where the petitioner pleads and proves by a preponderance of the evidence that his conviction resulted from '[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.'" *Commonwealth v. Small*, 238 A.3d

1267, 1273 n.1 (Pa. 2020), citing 42 Pa.C.S.A. § 9543(a)(2)(vi) (remaining citations omitted).

As noted, "to obtain relief based upon exculpatory, after-discovered evidence, the petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." *Small*, 238 A.3d at 1273 n.1 (citation omitted). Lastly, we note that this Court has defined "actual innocence" under Section 9543.1 as making it "more likely than not that no reasonable juror would find [petitioner] guilty beyond a reasonable doubt." *In re Payne*, 129 A.3d 546, 556 (Pa.Super. 2015) (citation omitted), *appeal denied*, 145 A.3d 167 (Pa. 2016).

Upon review, we find that Appellant has failed to prove that could not have obtained this evidence earlier through the exercise of due diligence. Although Appellant's judgment of sentence became final on January 28, 2019, he took no further action on the untested rectal swab in the victim's sexual assault kit until August 2021. The record, however, reflects that Appellant acknowledged in 2016 that he was aware of samples from the victim's rape kit that could have been tested, and in fact hired a laboratory to examine the samples. *See* "Motion for Post-Conviction DNA Testing," 8/27/21 at unnumbered 2, ¶ 4; notes of testimony, 4/8/16 at 198. Appellant was

informed that there was saliva found from a rectal swab taken from the victim, but he requested the lab not process those samples. Notes of testimony, 4/8/2016 at 199. Furthermore, the record reflects that Appellant was fully aware from both the Commonwealth's examination and his own hired expert that another male's DNA had been found underneath the victim's fingernails, but at no point during before or during his 2016 jury trial did he request a continuance or inform the trial court that he desired additional testing on the sexual assault kit. *Id.* at 133–136, 199–206. Additionally, during his direct appeal in 2018, Appellant challenged the trial court's denial of his request to hire a pathologist, but failed to raise any allegation of error with respect to the testing of the sexual assault kit.

Under Section 9545(b)(1)(ii), "due diligence requires neither perfect vigilance nor punctilious care, but rather it requires **reasonable efforts by a petitioner**, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." *Commonwealth v. Brown*, 141 A.3d 491, 506 (Pa.Super. 2016) (citation omitted; emphasis added). Clearly, Appellant failed to undertake reasonable efforts in this instance.

## III.

In his final claim, Appellant argues that the untimeliness of the instant PCRA petition should be excused due to the purported ineffectiveness of his prior PCRA counsel in failing to allege, albeit incorrectly, that the Commonwealth failed to preserve the full surveillance video of his apartment

taken in 2014. Appellant's brief at 18-21. We find that such relief is impermissible.

Courts in this Commonwealth have long recognized that there is no statutory exception to the PCRA time-bar applicable to claims alleging the ineffectiveness of prior counsel. As our Supreme Court has explained:

> It is well settled that allegations of ineffective assistance of counsel will not overcome the jurisdictional timeliness requirements of the PCRA. **See Commonwealth v. Pursell**, [749 A.2d 911, 915-916 (Pa. 2000)] (holding a petitioner's claim in a second PCRA petition, that all prior counsel rendered ineffective assistance, did not invoke timeliness exception, as "government officials" did not include defense counsel); **see also Commonwealth v. Gamboa-Taylor**, [753 A.2d 780, 785-786 (Pa. 2000)] (finding that the "fact" that current counsel discovered prior PCRA counsel failed to develop issue of trial counsel's ineffectiveness was not after-discovered evidence exception to time-bar)[.]

**Commonwealth v. Wharton**, 886 A.2d 1120, 1127 (Pa. 2005) (citation formatting amended).

To allow Appellant to raise new claims of prior PRCA counsel's ineffectiveness more than 1½ years after his judgment became final directly conflicts with the legislative mandate of Section 9545(b)(1) of the PCRA. **See Commonwealth v. Turner**, 80 A.3d 754, 767 (Pa. 2013) (stating that the PCRA places time limitations on claims, and in doing so, "strikes a reasonable balance between society's need for finality in criminal cases and the convicted person's need to demonstrate that there has been an error in the proceedings that resulted in his conviction"), **cert. denied**, 572 U.S. 1039 (2014). The

fact that Appellant frames some of his issues as alleging the ineffectiveness of prior PCRA counsel simply does not overcome this Court's lack of jurisdiction to address them.

In any event, we note that Appellant's underlying claim is belied by the record. As Attorney Javie explained during the April 12, 2022 evidentiary hearing, when he was initially retained by Appellant during the PCRA proceedings, the Commonwealth forwarded him a copy of the surveillance video that was incomplete to a technical error in the copying process. Notes of testimony, 4/12/22 at 74. Attorney Javie subsequently confirmed that the Commonwealth possessed the full video. *Id.* There was also no evidence presented that the surveillance video that Appellant and prior standby trial counsel received on April 28, 2015, approximately a year before his jury trial commenced, was similarly incomplete. *See* notes of testimony, 4/28/15 at 45.

Accordingly, for all the foregoing reasons, we discern no error on the part of the PCRA court in dismissing Appellant's PCRA petition.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 7/13/2023*